UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ARTHUR P.,

                Plaintiff,

v.

FRANK BISIGNANO, *Commissioner of Social Security*,

                Defendant.

**MEMORANDUM & ORDER**
24-CV-07553 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff Arthur P.[1] seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of the Social Security Administration's (the "SSA" or "Commissioner") final decision partially entitling Plaintiff to disability insurance benefits ("DIB") after January 1, 2022. *See* ECF No. 1 (Complaint). Before the Court are the parties' cross-motions for judgment on the pleadings. Plaintiff asks this Court to reverse the SSA's decision, *see* ECF No. 11-1 at 5 (Plaintiff's Motion), while Defendant asks the Court to affirm it, *see* ECF No. 13-1 at 28 (Defendant's Opposition and Cross-Motion). For the reasons set forth below, Plaintiff's motion is DENIED and Defendant's motion is GRANTED.

## BACKGROUND

      Plaintiff applied for DIB and supplemental security income ("SSI") on January 11, 2018. *See* ECF No. 8 at 64 (Administrative Record; "AR").[2] He alleged a disability with an onset date

---

[1]     Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. The Clerk of Court has modified the docket to reflect Plaintiff's abbreviated name.

[2]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. Citations to

of February 1, 2013, based on panic attack/anxiety disorder; agoraphobia; post-traumatic stress disorder ("PTSD"); high blood pressure; face, head, and mouth spasms; and insomnia. *See id.* at 50–51. The SSA denied Plaintiff's application on April 25, 2018, *see id.* at 20, 76–82, after which Plaintiff requested a hearing. The hearing took place before Administrative Law Judge James Kearns ("First ALJ") on September 3, 2019. *See id*. at 31–47. At the hearing, Plaintiff moved to amend the alleged onset date of disability from February 1, 2013, to December 28, 2016, which the First ALJ granted. *See id.* at 34–35. Plaintiff, who was represented by counsel, testified at the hearing along with an impartial vocational expert. *See id.* at 35–44, 45–47.

The First ALJ issued his decision on September 24, 2019, determining that Plaintiff was not disabled within the meaning of the Social Security Act. *Id*. at 7–23. After the Social Security Appeals Council denied Plaintiff's request for review on July 15, 2020, *id*. at 1–5, Plaintiff filed an appeal in this Court, pursuant to 42 U.S.C. § 405(g). While his appeal was pending before Judge Kuntz, Plaintiff filed subsequent claims for DIB and SSI on August 25, 2020. *See id.* at 586, 839–45.

On March 31, 2023, Judge Kuntz vacated the First ALJ's decision and remanded the case. *See id*. at 574–82. On April 18, 2023, in accordance with Judge Kuntz's Order, the Appeals Council vacated the First ALJ's decision and remanded the case to ALJ Barbara Dunn (the "Second ALJ" or "ALJ"). As part of its remand order, the Appeals Council directed the Second ALJ to consolidate Plaintiff's August 25, 2020 applications with his earlier claims from January 11, 2018. *See id.* at 584–86.

---

ECF cite to the pages assigned by the Electronic Case Files System. Citations to AR cite to the pages assigned by the Administrative Record. The Administrative Record includes ECF Nos. 8 and 10.

On remand, administrative hearings were held before the ALJ on April 22, 2022; June 22, 2023; December 11, 2023; and April 23, 2024. *Id*. at 536–55, 500–34, 1724–55, 472–99. Plaintiff was represented by counsel at each hearing, and renewed his motion to amend the alleged onset date of disability from February 1, 2013, to December 28, 2016, which the ALJ granted. *See id.* at 435–36.

The ALJ issued her decision on August 20, 2024. She concluded that Plaintiff was not disabled between December 28, 2016, and January 1, 2022 (the "Relevant Period"), but that he became disabled on January 1, 2022, and continued to be disabled through the date of her decision. *Id.* at 432–62. The ALJ reached the following conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.
2. The claimant has not engaged in substantial gainful activity since the amended alleged disability onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
3. Since the amended alleged disability onset date, December 28, 2016, the claimant has had the following severe medically determinable impairments: hypertension, obesity, anxiety, panic disorder, post-traumatic stress disorder ("PTSD"), and agoraphobia (20 CFR 404.1520(c) and 416.920(c)). Beginning on the established disability onset date of disability, January 1, 2022, the claimant has had the following additional severe medically determinable impairment: cardiomyopathy (20 CFR 416.920(c)).
4. Prior to January 1, 2022, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, I find that, prior to January 1, 2022, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for six hours; could sit for six hours; could no more than occasionally climb ladders, ropes, or scaffolds; could have no more than occasional exposure to hazards; could no more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; could perform simple, routine work; could have no public contact; and could have occasional co-worker and supervisory contact.
6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).
7. Prior to the established disability onset date, the claimant [sic] in the age category of a "younger person" age 18-49 (20 CFR 404.1563 and 416.963).

3

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).
9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).
10. Prior to January 1, 2022, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
11. Beginning on January 1, 2022, the severity of the claimant's impairments has medically equaled the criteria of section 4.02 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d) and 416.925).

*Id.* at 439–57. Thereafter, on October 20, 2024, the ALJ's decision became the SSA's final decision. *Id*. at 428.

Plaintiff then sought review in this Court by initiating this action on October 29, 2024. *See* ECF No. 1. On April 2, 2025, Plaintiff filed his motion for judgment on the pleadings. *See* ECF No. 11-1. On May 2, 2025, Defendant filed its opposition and cross-motion. *See* ECF No. 13-1. Although the Court provided Plaintiff with an opportunity to file a reply, he did not do so. *See* March 5, 2025, Text Order.

## **LEGAL STANDARD**

When a plaintiff challenges an ALJ's decision as unsupported by substantial evidence, as Plaintiff does here, the Court must "conduct a plenary review of the administrative record" and determine "whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). "The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022). But the standard is "not merely hortatory: It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022). The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Schillo*,

4

31 F.4th at 74.  Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Id.* (emphasis in original).  Put another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *Id.*  Although an ALJ is not required to "reconcile[]" "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

## DISCUSSION

On appeal, Plaintiff challenges the ALJ's finding that he was capable of performing full-time work, and thus not disabled, during the Relevant Period.  *See* ECF No. 11-1 at 5.  Plaintiff seeks remand on two grounds.  First, he argues that the ALJ erred by relying on "erroneous vocational testimony" to determine that Plaintiff could perform the job of cleaner *See id.* at 18.  Second, he takes issue with the ALJ's assessment of the severity of his mental impairments and of his residual functional capacity ("RFC").  *See id.* at 19–22.  The Court begins its analysis with a brief discussion of how an ALJ makes a disability determination, including as applied to this case, and then addresses Plaintiff's challenges.

   A. *Determining RFC and Disability*

A person is considered disabled for purposes of the Social Security Act if he cannot engage in substantial gainful activity due to a physical or mental impairment that has lasted or is expected to last for at least twelve consecutive months.  *See* 42 U.S.C. § 423(d)(1)(A).  To qualify for benefits under the Social Security Act, a claimant must be unable to perform his previous work or any other kind of work which exists in the national economy.  *See Dousewicz v. Harris*, 646 F.2d 771, 772 (2d Cir. 1981).

To determine whether a claimant is disabled, ALJs employ a "five-step sequential evaluation process," proceeding through each step until they reach a determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof in the first four steps." *Schillo*, 31 F.4th at 70. "In step five, the burden shifts, to a limited extent, to the Commissioner," but the Commissioner "need not provide additional evidence of the claimant's [RFC]" at that stage. *Id.*

At step one, the ALJ considers the claimant's work activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is performing substantial gainful activity, then the claimant is not disabled. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the twelve-month durational requirement. *Id.* §§ 404.1520(a)(4)(ii) (referencing § 404.1509), 416.920(a)(4)(ii) (referencing § 416.909). If the claimant does not have a severe impairment or combination of impairments that meets the durational requirement, then the claimant is not disabled. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that identifies and defines impairments that are of sufficient severity as to prevent any gainful activity (the "Listed Impairments"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment meets or equals one of the Listed Impairments, then the ALJ will find the claimant disabled. If not, the ALJ proceeds to step four. At step four, the ALJ evaluates the claimant's past relevant work and RFC, defined as "the most [the claimant] can still do despite [his] limitations." *Id.* § 404.1545(a)(1); *see id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past five years,[3] the work qualifies as

---

[3]  At the time of the ALJ's decision, § 404.1560(b)(1) provided for a 15-year lookback. Although not directly relevant in this appeal, the subsequent amendment to a five-year lookback

6

substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. *Id.* §§ 404.1560(b)(1)(i), 416.960(b)(1)(i). If the claimant's RFC permits him to perform past relevant work, he is not disabled. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of his RFC, age, education, and work experience, a claimant can perform other substantial gainful employment. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In this case, the ALJ followed the five-step process. At step one, she concluded that Plaintiff had not engaged in any substantial gainful activity since December 28, 2016, the alleged disability onset date. *See* AR at 439. At step two, she found that, since December 28, 2016, Plaintiff had the following severe impairments that significantly limited his ability to perform basic work activities: hypertension; obesity; anxiety; panic disorder; PTSD; and agoraphobia. *Id.*[4] And, she found that beginning on January 1, 2022, Plaintiff had an additional severe impairment: cardiomyopathy. *See id.* at 442. At step three, the ALJ concluded that none of Plaintiff's impairments were sufficiently severe to qualify as a Listed Impairment until January 1, 2022, when his cardiomyopathy reached chronic heart failure. *See* AR at 443, 457–58. Thus, Plaintiff was not disabled under the Social Security Act until that date. *See id.* at 461. Because the ALJ found that he was not disabled between December 28, 2016, and January 1, 2022 (the "Relevant Period"), she proceeded to step four and assessed Plaintiff's RFC during that period. *See id.* at 446.

---

does not function retroactively, so the Court applies the same version of the rule that the ALJ did. *See Paulette M. v. Comm'r of the Soc. Sec. Admin.*, No. 23-cv-04668, 2025 WL 383656, at *6 n.5 (E.D.N.Y. Feb. 4, 2025).

[4]     The ALJ determined that there was insufficient evidence to classify Plaintiff's anemia, hyperglycemia, hyperchloremia, hypercholesterolemia, gastrointestinal concerns, and thyroid-related issues as "severe" impairments. *See* AR at 441–42. Plaintiff does not challenge that finding.

At step four, the ALJ found that during the Relevant Period, Plaintiff was able to perform "light work"[5] with certain limitations:

> He could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for six hours; could sit for six hours; could no more than occasionally climb ladders, ropes, or scaffolds; could have no more than occasional exposure to hazards; could no more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; could perform simple, routine work; **could have no public contact**; and could have occasional co-worker and supervisory contact.

*Id.* at 446 (emphasis added). The ALJ determined that Plaintiff had no past relevant work, as he had not engaged in significant gainful work activity since 2013. *See id.* at 454.

At step five, the ALJ found that, during the Relevant Period, Plaintiff could perform jobs that exist in significant numbers in the national economy. She considered Plaintiff's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. *See* AR at 456. Plaintiff's age fell within the category of a "younger person," which is between ages 18–49; he had at least two years of college education, therefore he had at least a high school education; transferability of job skills was not an issue because he did not have past relevant work; and he had the RFC to perform "light work" with certain limitations. *See id.* at 455–56. At the April 23, 2024, hearing, the ALJ asked the vocational expert present whether jobs existed in the national economy that someone with Plaintiff's age, education, work experience, and RFC (with his same limitations) could

---

[5]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

perform. *See id.* at 495–97. The vocational expert testified that such an individual would be able to perform occupations such as:

- Cleaner (DOT code # 323.687-014), which is light and unskilled (SVP 2) work, with approximately 176,000 positions in the national economy;
- Inspector/Hand Packager (DOT code # 559.687-074), which is light and unskilled (SVP 2) work, with approximately 6,200 positions in the national economy; and
- Assembler, Small Products (DOT code # 706.684-022), which is light and unskilled (SVP 2) work, with approximately 20,000 positions in the national economy.

*Id.* The ALJ determined that the vocational expert's testimony was materially consistent with the information contained in the *Dictionary of Occupational Titles* ("DOT").[6] *See id.* Adopting the vocational expert's findings, the ALJ found that Plaintiff could make a successful adjustment to other work and therefore was "not disabled" during the Relevant Period. *See id.* at 457.

   B.  *Challenges to the ALJ's Decision*

The Court now addresses each of Plaintiff's challenges to the ALJ's determination that he was not disabled during the Relevant Period.

   i.  <u>The ALJ Did Not Err in Finding That Plaintiff Could Perform Jobs That Exist in Significant Numbers in the National Economy</u>.

Plaintiff first takes issue with the ALJ's finding that he could perform the job of cleaner during the Relevant Period. *See* ECF No. 11-1 at 18. Specifically, Plaintiff argues that the ALJ erred by adopting the vocational expert's "erroneous" testimony at step five because Plaintiff's RFC limitation—that he could have no public contact—conflicts with the DOT's description of the job of cleaner. *See id*. According to Plaintiff, remand is required because the ALJ "failed" to inquire whether the vocational expert's testimony conflicted with DOT descriptions and to seek an explanation of any inconsistencies. *Id.* His arguments are unpersuasive.

---

[6] U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th Ed., Rev. 1991).

9

There is no apparent conflict between the vocational expert's testimony and the DOT. The DOT description for the occupation of "cleaner" does not give any indication that the job requires interacting with others, let alone the general public. *See E.E.O.C. v. United Parcel Serv., Inc.*, 587 F.3d 136, 137 n.1 (2d Cir. 2009) ("Public-contact positions require the employee to meet the public while on the job."). Although the DOT describes the cleaner occupation as involving "rendering personal assistance to patrons," the description does not indicate that interfacing with the public is required. *See* DOT § 323.687-014.[7] Moreover, the DOT occupational code indicates that a cleaner requires only a minimum degree of functionality in relation to other people.[8] It specifically states that taking instructions and helping people is "not significant." *Id*. Thus, the vocational expert's testimony did not conflict with the DOT, as the ALJ correctly concluded. *See* AR at 456 ("[T]he testimony of the vocational expert present at the April 23, 2024 hearing is consistent with the information contained in the *Dictionary of Occupational Titles* in all respects material hereto.").

---

[7] The full description of a cleaner's role is: "Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.)." DOT § 323.687-014.

[8] The middle three digits of the DOT occupational code are the Worker Functions ratings of the tasks performed in the occupation. *See Parts of the Occupational Definition*, Office of Admin. L. Judges L. Libr., U.S. Dep't of Labor, https://perma.cc/6HHJ-B4PB. A separate digit expresses the worker's relationship to data (fourth digit), people (fifth digit), and things (sixth digit). *Id*. Worker Functions involving more complex responsibility and judgment are assigned lower numbers in these three lists while functions which are less complicated have higher numbers. *Id*. For people, "8" is the highest number available. *Id*. Here, the fifth digit in the DOT occupational codes for all three jobs suggested by the vocational expert is "8." *See* DOT §§ 323.6<u>8</u>7-014 (cleaner), 559.6<u>8</u>7-074 (inspector/hand packager), and 706.6<u>8</u>4-022 (small parts assembler) (emphasis added).

Even if there was a conflict and the ALJ failed to make the requisite inquiry, such an error would be harmless. The ALJ identified two other jobs—inspector/hand packager and small products assembler—that someone with Plaintiff's age, education, work experience, and RFC (with his same limitations) could perform and that exist in significant numbers in the national economy. *See Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("The Commissioner need show only one job existing in the national economy that Bavaro can perform."); *see, e.g., Chaderick G. v. Comm'r of Soc. Sec.*, No. 24-cv-00258, 2024 WL 4767031, at *4 (S.D.N.Y. Nov. 13, 2024) (an ALJ's error in including an inappropriate occupation is harmless if the other identified occupations provide a significant number of available jobs). The other two occupations, neither of which Plaintiff takes issue with, amount to over 26,200 jobs available in the national economy, which is a "significant" number. *See Pichardo v. Comm'r of Soc. Sec.*, 714 F. Supp. 3d 183, 195 (E.D.N.Y. 2024) (Though "[c]ourts have not established a bright line test as to the threshold number of jobs that is significant for the purposes of the [Social Security] Act," "courts have generally held that what constitutes a significant number is fairly minimal, and numbers between 9,000 and 10,000 jobs have typically been found to be sufficiently significant to meet the Commissioner's burden."). Therefore, the ALJ did not err in finding that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy" during the Relevant Period. AR at 457.

      ii.      The ALJ's Findings Regarding Plaintiff's Mental Limitations and RFC Were Supported by Substantial Evidence.

Plaintiff next contends that remand is warranted because the ALJ's findings at steps three and four about the severity of his mental impairments and his RFC during the Relevant Period were not supported by substantial evidence. *See* ECF No. 11-1 at 19–20. Specifically, he challenges the ALJ's determinations that (i) none of his mental impairments were sufficiently

11

severe to qualify as a Listed Impairment and that (ii) he had the RFC to perform work at the light exertional level with limitations. *See id.* at 20–21. Plaintiff argues that the ALJ improperly substituted her opinion for that of a physician and disregarded a consistency among the mental health professionals by "failing to consider that every opinion in the record from a mental health professional who treated or examined [Plaintiff] assessed ***moderate to marked*** limitations in his ability to meet the mental demands of basic work activity." *Id.* at 20 (emphasis in original). Additionally, he claims that the ALJ erred by not including "any discussion of Dr. Flach's medical opinion" in her decision. *Id.* at 22. Plaintiff's arguments are unavailing.

### 1. Substantial Evidence

As an initial matter, the ALJ's determination was supported by substantial evidence. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) ("[T]he relevant question is not whether substantial evidence supports plaintiff's position, but whether substantial evidence supports *the ALJ's decision.*") (emphasis in original)).

The ALJ's findings, that none of Plaintiff's mental impairments during the Relevant Period rose to the severity of a Listed Impairment and that he had the RFC to perform work at the light exertional level with limitations, is consistent with the evidence in the record. The ALJ considered the severity of Plaintiff's mental impairments "singly and in combination" and determined that they "[did] not meet or medically equal the criteria of Listing 12.04 (which addresses depressive, bipolar, and related disorders), Listing 12.06 (which addresses anxiety and obsessive-compulsive disorders), Listing 12.15 (which addresses trauma and stressor-related disorders), or any other listing, at any time material hereto." AR at 444.

The ALJ based her opinion on objective medical data, opinion evidence from mental health professionals, and other evidence of record, such as evidence pertaining to Plaintiff's daily activities; the location, duration, frequency, and intensity of his symptoms; factors that precipitate or aggravate his symptoms; the type, dosage, effectiveness, and side effects of any medication he takes or has taken to alleviate pain or other symptoms; treatment, other than medication, that he has received; and measures other than treatment that he uses or has used to relieve symptoms. *See id.* at 452–53. For example, she explained that, with respect to Plaintiff's overall treatment history and use of medications, the records show that his care "consisted of mainly conservative measures (at most) such as counseling, follow-up visits, prescription medications, and the like" and that these "modest measures" yielded some relief. AR at 453; *see, e.g., Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (improvement with treatment is properly considered in concluding claimant not disabled).

In reviewing opinion evidence from medical experts, consultative physicians, and Plaintiff's treating nurse practitioner, the ALJ considered what evidence the medical professionals had available to them and relied on; whether their opinions were consistent with those of other medical professionals; and whether their opinions were consistent with the overall record, including Plaintiff's progress notes, activities of daily living, treatment history, and other data from the Relevant Period. *See, e.g.*, AR at 450 (finding medical expert's opinion that Plaintiff did not have severe mental conditions unpersuasive, despite expert's access to some medical evidence that was unavailable to other sources, where the medical expert's opinion was inconsistent with "virtually every other formal assessment in this area"); *id.* at 451–52 (finding consultative psychologist's opinion that Plaintiff had "a marked limitation to sustain an ordinary routine and regular attendance at work" unpersuasive where it was inconsistent with the consultative psychologist's own findings and the record as a whole); *id.* at 451 (finding treating

13

nurse practitioner's opinion that Plaintiff's mental ability to adjust to a job and function in several areas was "poor or none" to be "not entirely persuasive" where, *inter alia*, the nurse practitioner's forms were signed after the Relevant Period and gave "no clear indication as to what period they are meant to address").

The ALJ also considered Plaintiff's subjective assertions that he had major difficulties in most, if not all, broad areas of mental functioning—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See* AR at 444–45. The ALJ afforded Plaintiff some benefit of the doubt in finding that his combination of impairments warranted confinement to "light exertion with several additional non-exertional limitations." *See* AR at 449. However, she was unable to accept his subjective assertions in their entirety because there was a lack of medical evidence to support the severity of symptoms he claimed. She explained:

> In sum, there appears to be somewhat of a disconnect between the claimant's subjective complaints regarding the [Relevant Period] on one side, and what the comparatively modest diagnostic and clinical evidence regarding that period will reasonably support on the other. . . . As discussed herein, there is a lack of such evidence indicating that the claimant's conditions in the early period in question were as severe as he now claims.

AR at 452. And, as she correctly pointed out, "no source has explicitly opined that, in the [Relevant Period], the claimant had an impairment or a combination of impairments that, either alone or in combination, met or medically equaled a listing." AR at 443.

### 2. "Consistency" of Medical Opinions

Plaintiff misses the mark with his argument that the ALJ disregarded a "consistency" among the mental health professionals' opinions who concluded that Plaintiff had "***moderate to marked*** limitations in his ability to meet the mental demands of basic work activity." *See* ECF No. 11-1 at 20–21 (emphasis in original).

A mental disorder's effects, or how severely it limits a claimant's mental functioning, is evaluated on a five-point rating scale consisting of: none; mild; moderate; marked; and extreme.⁹  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2).  To qualify as a Listed Impairment, a claimant's mental disorder must result in "extreme limitation" of one, or "marked limitation" of two, area(s) of mental functioning.  *See id.*  "Moderate" and "marked" are separate and distinct ratings, with "marked" reflecting a greater limitation.  While marked limitations in two domains are *per se* disabling, moderate limitations—of any number—still allow for claimants to preform unskilled work.  *See id.*; *Rushford v. Kijakazi*, No. 23-cv-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) ("[I]t is well-established that such moderate limitations do not prevent individuals from performing 'unskilled work.'") (quoting *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010)).  Plaintiff's attempts to characterize moderate and marked limitations as being "consistent" with each other is incorrect.

Even if the medical professionals' opinions had been consistent, which they were not, the ALJ was entitled to consider more than just their opinions in rendering her assessment of Plaintiff's mental limitations and RFC.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [her] decision, [s]he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." ).

---

⁹ The five rating points are defined as follows: "(a) *No limitation (or none)*: [Claimant] is able to function in this area independently, appropriately, effectively, and on a sustained basis; (b) *Mild limitation*: [Claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited; (c) *Moderate limitation*: [Claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is fair; (d) *Marked limitation*: [Claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited; and (e) *Extreme limitation*: [Claimant is] not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2).

### 3. Dr. Flach's Opinion

Finally, the Court easily disposes of Plaintiff's argument that the ALJ erred by not discussing Dr. Flach's medical opinion. *See* ECF No. 11-1 at 22. For one, the ALJ was "not required to articulate how [she] considered each medical opinion . . . ." 20 C.F.R. § 404.1520c(b)(1). More importantly, Plaintiff's argument is flatly contradicted by the record, which shows that the ALJ considered Dr. Flach's opinion in forming her conclusions about both the severity of Plaintiff's mental limitations and his RFC. *See, e.g.*, AR at 445 (considering Dr. Flach's report, "Exhibit 3F," regarding Plaintiff's daily activities); *id.* at 446 (considering Dr. Flach's report regarding Plaintiff's level of ongoing mental impairment); *id.* at 448 (citing Dr. Flach's report as being one of the "occasional references" to Plaintiff's "anxious, depressed, and/or irritable moods" and "slightly diminished memory and concentration [] at times"); *id.* at 450 (citing Dr. Flach's report as being one of the formal assessments that "more or less agree that [Plaintiff] has had some mental limitations not clearly inconsistent with the [RFC]"); *id.* at 453–54 (citing Dr. Flach's report regarding Plaintiff's daily activities).

\*          \*          \*

In short, because the ALJ's decision was supported by substantial evidence in the Administrative Record and she applied the correct legal standard, the Court agrees with the ALJ that Plaintiff failed to meet his burden at step three to show that during the Relevant Period his mental limitations met or equaled a Listed Impairment, *see id.* at 446, and at step four that he did not have the RFC to perform light exertional level work with limitations, *see id.* at 454. *See, e.g., Sizer v. Colvin*, 592 F. App'x 46, 47 (2d Cir. 2015) (finding Commissioner's decision to be supported by substantial evidence in administrative record where the ALJ's determination was based on medical opinion evidence, objective medical evidence, and claimant's testimony at ALJ hearing).

## **CONCLUSION**

In this case, the ALJ's decision was amply supported by substantial evidence. Accordingly, Plaintiff's motion for judgment on the pleadings is DENIED, Defendant's motion is GRANTED, and the SSA's decision is affirmed. The Clerk of Court is respectfully directed to enter judgment consistent with this decision and to close this case.

SO ORDERED.

                                              */s/ Hector Gonzalez*
                                               HECTOR GONZALEZ
                                               United States District Judge

Dated: Brooklyn, New York
        October 16, 2025